

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ATLANTIC RECORDING CORPORATION,  :
                                                                                :   08 Civ. 5201
                                    Plaintiff,                       :
                                                                                :
              - v –                                                        :
                                                                                :
                                                                                :
BCD MUSIC GROUP, INC. and                        :
MIXTRAP, LLC.,                                              :
                                                                                :
                                    Defendants.                  :
                                                                                :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Kenneth L. Bressler, Esq.
Jennifer S. Smith, Esq.
Blank Rome, LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

*Attorneys for Plaintiff*


TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ........................................................................................................1

II. FACTS ..........................................................................................................................1

III. ARGUMENT ................................................................................................................4

    A. Atlantic is Entitled to a Preliminary Injunction ..................................................4

        1. Irreparable Harm ......................................................................................5

        2. Likelihood of Success on the Merits .......................................................6

            (a) Defendants' Use of the Artists' Names and Likenesses to Promote Their Infringing Albums ............................................6

                (i) Plies' and Gucci Mane's Names and Likenesses are Entitled to Protection ................................................................7

                (ii) The Use of Plies' and Gucci Mane's Names and Likenesses Creates a Likelihood of Confusion ..........................8

            (b) Unfair Competition - Defendants' "Passing Off" or Causing Confusion as to the Origin of their Goods ..........................................9

            (c) Copyright – Defendant BCD is Infringing Atlantic's Copyright in *Back to The Traphouse* .......................................................11

            (d) Tortious Interference – Defendants Have Interfered with Atlantic's Exclusive License Agreements with its Artists ................13

        3. Serious Questions as to Merits and Balance of Hardships .......................14

            (a) Serious Questions as to Merits ..........................................................14

            (b) Balance of Hardships ........................................................................14

    B. Expedited Discovery is Appropriate ...................................................................15

IV. CONCLUSION ............................................................................................................16



# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Allen v. National Video, Inc.*, 610 F. Supp. 612 (S.D.N.Y. 1985) .......................................... 7

*Concrete Machine Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600 (1st Cir. 1988) .......................................................................................................................... 14

*Deere & Co. v. MTD Holdings, Inc.*, 2004 U.S. Dist. LEXIS 2550 (S.D.N.Y. 2004) ................................................................................................................... 9, 10

*Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983) .................... 13

*Federal Express Corp. v. Federal Expresso, Inc.*, 201 F.3d 168 (2d Cir. 2000) ................. 5

*Feiner v. Turner Entertainment Co.*, 98 F.3d 33 (2d Cir. 1996) .......................................... 5

*Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306 (S.D.N.Y. 1995) .................... 11

*Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997) .......................................................................................................................... 11

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) .................. 5, 14

*Grand Upright Music Ltd. v. Warner Brothers Records, Inc.*, 780 F. Supp. 182 (S.D.N.Y. 1991) ........................................................................................................... 11

*Irish Lesbian and Gay Org. v. Giuliani*, 918 F. Supp. 728, 730 (S.D.N.Y. 1996) ........... 15

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995) .................. 5

*Lentjes Bischof/GmbH v. Joy Environment Technologies, Inc.*, 986 F. Supp. 183 (S.D.N.Y. 1997) ........................................................................................................... 15

*Lurzer GMBH v. American Showcase, Inc.*, 73 F. Supp. 2d 327 (S.D.N.Y. 1998) ........... 10

*Morningside Group Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133 (2d Cir. 1999) ................................................................................................................ 7

*Morris v. Business Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2001) ......................................... 11

*RCA Records v. All-Fast System, Inc.*, 594 F. Supp. 335 (S.D.N.Y. 1984) ...................... 11

*Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68 (S.D.N.Y. 1998) .................... 6



*Rich v. RCA Corp.*, 390 F. Supp. 530 (S.D.N.Y. 1975)..................................................8

*Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000).............................8

*SKS Merch, LLC v. Barry*, 233 F. Supp. 2d 841 (S.D.N.Y. 2002)................................8

*S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188 (E.D.N.Y. 2007)....................................................................................................................13

*Sega Enterprises, Ltd. v. MAPHIA*, 948 F. Supp. 923 (N.D. Cal. 1996)......................6

*Telerate Systems, Inc. v. Caro*, 689 F. Supp. 221 (S.D.N.Y. 1988).............................13

*The Score Board v. Upper Deck Co.*, 959 F. Supp. 234 (D.N.J. 1997).................13, 14

*Tin Pan Apple, Inc. v. Miller Brewing Co.*, 737 F. Supp. 826 (S.D.N.Y. 1990)...........7

*Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408 (S.D.N.Y. 1999)............................5

*Tri-Star Pictures, Inc. v. Leisure Time Productions*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998)......................................................................................................................10

*Uneeda Doll Co. v. Regent Baby Products Corp.*, 355 F. Supp. 438 (E.D.N.Y. 1972)......................................................................................................................14

## STATUTES

15 U.S.C.S. § 1125(a) (2008) .............................................................................................7

17 U.S.C.A. § 201(d)(2) (1997)........................................................................................12

## MISCELLANEOUS

J. Thomas McCarthy, *McCarthy On Trademarks and Unfair Competition*, § 27:82, (4th ed. 2008)...........................................................................................6

I.  INTRODUCTION

Plaintiff Atlantic Recording Corporation ("Atlantic") is moving by order to show cause for a preliminary injunction to enjoin Defendants BCD Music Group, Inc. ("BCD") and Mixtrap, LLC ("Mixtrap") from manufacturing and distributing pirated copies of recordings made by Atlantic recording artists Al Gernod L. Washington p/k/a "Plies" ("Plies") and Radric Davis p/k/a "Gucci Mane" ("Gucci Mane") (collectively, the "Artists").

Atlantic is seeking expedited relief because it is scheduled to release a new album by Plies titled *Definition of Real* on June 10, 2008, and Defendants are deceiving consumers by distributing albums with either the identical title (*Definition of Real* as distributed by Mixtrap) or a confusingly similar title (*Real Definitions* as distributed by BCD), both of which contain recordings by Plies and both of which are promoted using Plies' professional name and image. In addition, Atlantic seeks an injunction against BCD's unauthorized album *No Pad No Pencil* by Gucci Mane, released in late March 2008, which competes with sales of Atlantic's *Back to the Traphouse* album by the same artist. (BCD's albums *Real Definitions* and *No Pad No Pencil*, along with Mixtrap's album *Definition of Real* will be collectively referred to as the "Infringing Albums.")

II.  FACTS

*Parties*

Plaintiff Atlantic is one of the premier record labels in the world and has been in business since 1947. Its catalog of licensed music includes recordings by Ray Charles, Aretha Franklin, John Coltrane and Led Zeppelin. Atlantic's current artists include James Blunt, Kid Rock, Plies, Gucci Mane and matchbox twenty. (Declaration of Michael Kushner dated June 5, 2008 ("Kushner Dec.") at ¶ 2.)

Defendants BCD and Mixtrap distribute unauthorized mixtapes of recordings made by established artists signed to major record labels.

*Atlantic's Recording Artist Plies*

Plies is the professional name of hip-hop artist Al Gernod L. Washington. Plies is a highly successful recording artist whose first album released on Atlantic in 2007, *The Real Testament*, sold more than 500,000 units and was certified gold by the Recording Industry Association of America ("RIAA") and whose single "Shawty," released by Atlantic in 2007 and included in the album *The Real Testament*, sold more than 1 million copies and was certified platinum by the RIAA. (Kushner Dec. ¶ 8.)

Pursuant to agreements dated as of January 31, 2006, Atlantic has the exclusive right to recordings made by Plies during the term of such agreements as well as the exclusive right to use Plies' name and likeness in connection with such recordings. (Kushner Dec. ¶ 9.)

In late 2007, Plies and Atlantic decided to name Plies' next album *Da Definition of Real* but ultimately decided to drop the word "Da" and call the album *Definition of Real*. The standard version of the album has 15 tracks on it and is scheduled to be released on June 10, 2008. Atlantic has been aggressively promoting the upcoming album through television, radio, the Internet, local and national press and street marketing. (Kushner Dec. ¶ 10.)

*Atlantic's Recording Artist Gucci Mane*

Gucci Mane is the professional name of hip-hop artist Radric Davis. Gucci Mane is a successful recording artist whose hit single "Freaky Gurl Remix" reached the Top Ten on the *Billboard* music charts. The recording "Freaky Gurl Remix" was included on Gucci Mane's album *Back to the Traphouse*, which Atlantic released in December 2007. (Kushner Dec. ¶ 11.)

Pursuant to agreements dated as of November 17, 2006, Atlantic owns all recordings made by Gucci Mane during the term of the agreements and has the exclusive right to use Gucci Mane's name and likeness during such term. (Kushner Dec. ¶ 12.)

*Atlantic Refuses Defendant BCD's Request to Exploit Plies' Sound Recordings*

On March 26, 2008, Margo Scott, Atlantic's Senior Vice President of Business and Legal Affairs ("Scott"), received an email from a lawyer named Wallace Collins ("Collins"), in which Collins indicated that he was acting on behalf of a company called Aqua Interests and inquired whether certain recordings (the "Plies Recordings") were claimed by or connected to Atlantic. (Declaration of Margo Scott dated June 4, 2008 ("Scott Dec.") at ¶ 2; Exhibit 4.) The Plies Recordings included sound recordings by Plies in which other Atlantic artists also performed as side artists. (Scott Dec. ¶ 2; Kushner Dec. ¶ 14.)

Scott sent Collins an email advising him that Atlantic had exclusive rights to the Plies Recordings, that Atlantic would not authorize his client's exploitation of the Plies Recordings, and that Atlantic would enforce its rights if any unauthorized exploitation were to take place. (Scott Dec. ¶ 2; Exhibit 4.) On March 28, 2008, Atlantic sent Collins a letter confirming Scott's earlier advice. (Scott Dec. ¶ 3; Exhibit 5.)

In response, Collins telephoned Scott and asked if Atlantic would grant his client a license to distribute the Plies Recordings at a proposed price of $1 per CD unit. Scott did not agree to his request. (Scott Dec. ¶ 3.)

*Defendant BCD Is Willfully Infringing Atlantic's Rights In Plies' Sound Recordings*

In April 2008, Atlantic discovered that BCD had released an album titled *Real Definitions*, which included the Plies Recordings. (Kushner Dec. ¶ 18; A copy of the album *Real Definitions* is Exhibit 8.)

-3-

On April 24, 2008, Atlantic sent a cease and desist letter to BCD. (Scott Dec. ¶ 4; Exhibit 6.) The next day, Scott received an email from Collins — the same lawyer who previously indicated that he was representing Aqua Interests — stating that he was representing Defendant BCD. (Scott Dec. ¶ 5; Exhibit 7.)

*Defendant Mixtrap Is Willfully Infringing Atlantic's Rights In Plies' Sound Recordings*

During Atlantic's research for its lawsuit against BCD, Atlantic learned that Defendant Mixtrap LLC ("Mixtrap") is distributing an album titled *Definition of Real*, which also contains unauthorized sound recordings by Plies. (Kushner Dec. ¶¶ 22-23; A copy of the cover of *Definition of Real* is Exhibit 9.)

*Defendant BCD Is Willfully Infringing Atlantic's Rights In Gucci Mane's Sound Recordings*

BCD is also distributing an unauthorized album by Atlantic artist Gucci Mane titled *No Pad No Pencil*. (Kushner Dec. ¶ 24; A copy of the cover of *No Pad No Pencil* is Exhibit 20.) *No Pad No Pencil* embodies a recording by Gucci Mane titled "Freaky Girl." As discussed above, "Freaky Gurl Remix" was a top ten *Billboard* recording by Gucci Mane that is embodied on the Atlantic album *Back to the Traphouse*.

Despite being an unauthorized album, several recordings on *No Pad No Pencil* contain a voiceover falsely suggesting that Atlantic endorsed the distribution and sale of the album. For example, on multiple tracks the voiceover states: "So Icy Entertainment, Atlantic Records, the official mix tape before *Back to the Traphouse*." Other tracks contain variations of this statement. (Kushner Dec. ¶ 27.)

III. ARGUMENT

A. Atlantic is Entitled to a Preliminary Injunction.

In order to obtain a preliminary injunction, Plaintiff Atlantic must demonstrate (A) irreparable harm if the preliminary injunction is not granted, and (B) either (1) likelihood of

-4-

success on the merits or (2) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balancing of hardships tipping decidedly in the moving party's favor. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995).

    1.    <u>Irreparable Harm</u>

Irreparable harm is presumed once plaintiff establishes a likelihood of confusion on a trademark claim. *Federal Express Corp. v. Federal Expresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000). Likewise, "[w]hen a plaintiff establishes a prima facie case of copyright infringement, irreparable harm is presumed." *Feiner v. Turner Entm't Co.*, 98 F.3d 33, 34 (2d Cir. 1996); *accord Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 410 (S.D.N.Y. 1999).

In addition to this legal presumption, the evidence shows Atlantic will suffer irreparable harm absent the issuance of a preliminary injunction. Defendants' continued infringement will damage Atlantic's reputation and the commercial value of its Artists. The inevitable decrease in future album sales would be impossible to fully quantify and compensate through money damages.

First, the Infringing Albums' packaging is very low quality, which negatively and irreparably affects Atlantic's reputation. For example, the plastic jewel case for the Mixtrap *Definition of Real* album breaks easily and the booklet inserted in the packaging is cheaply made. In short, it looks like what it is — a cheap pirated CD. (Kushner Dec. ¶ 36.)

Second, Defendants' simultaneous sale of competing albums will inevitably decrease Atlantic's sales for songs by the same artists, Plies and Gucci Mane. Reduced sales volume means a lower ranking on the *Billboard* music charts and fewer gold or platinum albums or singles. If Plies and Gucci Mane are perceived as less successful artists, their future albums will



be less successful, and their commercial value to Atlantic for these and future albums will be irreparably harmed in a manner that cannot be fully quantified. (Kushner Dec. ¶¶ 38-39.)

Third, Defendants' release of albums by Atlantic artists confuses legitimate players in the music industry about which label represents Plies and Gucci Mane. Parties who legitimately wish to use the Artists' recordings may erroneously contact Defendants, rather than Atlantic, to purchase the necessary rights. (Kushner Dec. ¶ 40.)

Finally, many of the tracks on Defendants' *Definition of Real* and *Real Definitions* albums are older recordings by Plies that may have been previously released as promotional materials, which may lead consumers who thought they were buying new material to feel deceived. (Kushner Dec. ¶ 43.)

2.  Likelihood of Success on the Merits

The undisputable facts set forth in the accompanying Declarations establish that Defendants have used Plies' and Gucci Mane's name and likeness in violation of Atlantic's exclusive rights, have infringed Atlantic's exclusive rights to the copyrights in sound recordings by Plies and Gucci Mane, and have tortiously interfered with Atlantic's exclusive rights.

    (a)    Defendants' Use of the Artists' Names
                and Likenesses to Promote Their Infringing Albums

It is clear that "the use of an artist, author, or performer's name is not permitted if the name appears on an unauthorized publication of the author's work." J. Thomas McCarthy, *McCarthy On Trademarks and Unfair Competition*, § 27:82, at 27-193 (4th ed. 2008); *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68 (S.D.N.Y. 1998) (marketing of radio program similar in format to plaintiff's program, with labels and advertising falsely crediting plaintiff as producer of radio program, is actionable under the Lanham Act); *Sega Enters., Ltd. v.*

*MAPHIA*, 948 F. Supp. 923, 938 (N.D. Cal. 1996) (enjoining use of plaintiff's name on plaintiff's video games made available to public on the internet without its permission).

In order to prevail on its claim that Defendants' unauthorized use of the Artists' names and likenesses on the Infringing Albums constitutes false designation of origin and false advertising, Plaintiff Atlantic must show that (a) Plies' and Gucci Mane's names and likenesses are valid marks entitled to protection and that (b) Defendants' use of Plies' and Gucci Mane's names and likenesses creates a likelihood of confusion. 15 U.S.C.S § 1125(a) (2008)[1]; *Morningside Group Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133, 137 (2d Cir. 1999).

    (i)    Plies' and Gucci Mane's Names and
               Likenesses are Entitled to Protection

A celebrity's name and likeness is a valid mark entitled to protection under the trademark laws. *See, e.g., Tin Pan Apple, Inc. v. Miller Brewing Co.*, 737 F. Supp. 826, 834-35 (S.D.N.Y. 1990) (use of look-alikes of group "Fat Boys" in beer commercial is actionable under Lanham Act); *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 625 (S.D.N.Y. 1985) ("a celebrity has a ... commercial investment in the 'drawing power' of his or her name and face in endorsing products and in marketing a career" and thus the Lanham Act protects a celebrity's likeness). As successful recording artists, Plies' and Gucci Mane's names and likenesses are thus protectable.

---

[1] Section 43 (a) of the Lanham Act provides in pertinent part:
    (i) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
    (ii) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (iii) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

    (ii)  The Use of Plies' and Gucci Mane's Names
       and Likenesses Creates a Likelihood of Confusion

The use of the celebrity's name or image, particularly where the product or merchandise is the same or virtually the same as authorized products or merchandise, creates a likelihood of confusion regarding the celebrity's endorsement or authorization. *SKS Merch, LLC v. Barry*, 233 F. Supp. 2d 841, 847 (S.D.N.Y. 2002) (granting preliminary and permanent injunction, holding that "[b]ecause it appears to be nearly identical to the licensed, authorized merchandise, the bootleg merchandise clearly causes a likelihood of confusion as to [plaintiff's] association with and sponsorship and approval of that merchandise."); *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 378-86 (S.D.N.Y. 2000) (granting preliminary injunction where vendor distributed and sold genuine merchandise under celebrity's genuine name and likeness, but without authorization); *Rich v. RCA Corp.*, 390 F. Supp. 530, 531 (S.D.N.Y. 1975) (granting preliminary injunction where defendant's use of singer's current likeness on album of old recordings was found to mislead public).

  Defendants' use of Plies' and Gucci Mane's names and likenesses in connection with the Infringing Albums containing recordings by those artists clearly is causing confusion as to Atlantic's association with the Infringing Albums. For example, online retailers have already demonstrated actual confusion between Mixtrap's and Atlantic's Plies albums titled *Definition of Real*. Online sellers have offered for sale Mixtrap's *Definition of Real* album, but mistakenly described it as on the Atlantic label or the Slip-N-Slide label and as scheduled for release on June 10, 2008. (Exhibits 11, 13, 14, 15, 17 and 18.) (Plies' albums are released by Atlantic under the Atlantic/Slip-N-Slide label.) Some websites mistakenly list the 26 tracks on Mixtrap's *Definition of Real* album as the track names on the upcoming Atlantic *Definition of Real*, even though the standard version of Atlantic's album has only 15 tracks. (Exhibits 11, 12, 13, 14, 15,

-8-



17 and 18.) At least one website even uses the authentic cover of Atlantic's *Definition of Real* album but lists the 26 tracks from the infringing Mixtrap album. (Kushner Dec. ¶ 42; Exhibit 14.)

Online retailers have also demonstrated actual confusion regarding the source and/or sponsorship of BCD's *No Pad No Pencil* album. For example, the online retailer www.iapstore.com describes *No Pad No Pencil* as follows: "Atlantic Records presents the official Gucci Mane mixtape. . ." (Kushner Dec. ¶ 45; Exhibit 19.) This is not surprising as *No Pad No Pencil* contains a voiceover on several tracks, using Atlantic's name and claiming that the album is "the official mixtape" for Atlantic's *Back to the Traphouse* album. Consumers are therefore likely to be confused into believing that *No Pad No Pencil* is an Atlantic release. (Kushner Dec. ¶ 44.)

        (b)    Unfair Competition - Defendants' "Passing Off"
              or Causing Confusion as to the Origin of their Goods

"The essence of unfair competition under New York common law, is the bad-faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Deere & Co. v. MTD Holdings, Inc.,* 2004 U.S. Dist. LEXIS 2550 at *54 (S.D.N.Y. 2004). Here, Defendants are unfairly competing with Atlantic by selling recordings by Plies and Gucci Mane using their names and likenesses, which are exclusively licensed to Atlantic, and by passing off the Infringing Albums as being sponsored by Atlantic.

To establish a claim under New York law for common law unfair competition, and be granted equitable relief, a plaintiff must show that (1) there is likelihood of confusion and

(2) defendant acted in bad faith.[2] *Id.*; *Tri-Star Pictures, Inc. v. Leisure Time Productions*, 14 F. Supp. 2d 339, 363-64 (S.D.N.Y. 1998).

As discussed above, Plaintiff has established a likelihood of confusion between Defendants' use of the Plies and Gucci Mane names and likenesses and Atlantic's use of those Artists' names and likenesses. *See Lurzer GMBH v. American Showcase, Inc.*, 73 F. Supp. 2d 327, 331 n.5 (S.D.N.Y. 1998) ("[T]he standards for Section 43(a) claims of the Lanham Act and unfair competition claims under New York Law are almost indistinguishable.").

There can be no question that Defendants are acting in bad faith. Defendant BCD proceeded to use Plies' name and likeness in connection with its exploitation of unauthorized recordings by Plies even after being warned that Atlantic had exclusive rights to the Plies Recordings and would not consent to BCD's use of such recordings. BCD's distribution of Gucci Mane's *No Pad No Pencil* is also in bad faith as the album contains voiceovers indicating that the album is by Atlantic Records and "is the official mixtape," when it is not. And it can be no coincidence that Defendant Mixtrap is distributing infringing recordings by Plies using the exact same album title as Atlantic's upcoming release. Surely, Mixtrap is trying to pass its album off as the authentic release by Atlantic.

Even if Defendants' bad intent were not clear, it may be presumed by their use of identical artist names (Plies and Gucci Mane), identical album title (*Definition of Real*) and confusingly similar album title (*Real Definitions*). Bad faith is presumed and Plaintiff has the burden to persuade this Court that there is a credible innocent explanation for Defendants' use of Plaintiff's mark. *Tri-Star*, 14 F. Supp. 2d at 357. If Plaintiff fails to do so, there is an inference of bad faith. *Id.*

---

[2] To recover money damages, Atlantic must establish actual confusion. *Deere*, 2004 U.S. Dist. LEXIS 2550 at
*(Footnote continued on next page)*

  (c)  Copyright – Defendant BCD is Infringing Atlantic's
     Copyright in *Back to The Traphouse and* Mixtrap is
     Infringing *The Real Testament*

"[Stealing] violates not only the Seventh Commandment, but also the copyright laws of this country." *Grand Upright Music Ltd. v. Warner Bros. Records, Inc.*, 780 F. Supp. 182, 183 (S.D.N.Y. 1991). A preliminary injunction is the appropriate remedy for copyright infringement. *See, e.g., Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1316 (S.D.N.Y. 1995) (preliminary injunction issued when the defendants distributed copies of the plaintiff's master recordings); *RCA Records v. All-Fast Sys., Inc.*, 594 F. Supp. 335, 338-39 (S.D.N.Y. 1984) (defendants preliminarily enjoined from further reproduction of plaintiffs' copyrighted cassettes).

In order to prevail on a copyright infringement claim, Plaintiff Atlantic must show that it is the valid owner of the copyright and that Defendants copied constituent elements of the original work in question. *Fonar Corp. v. Domenick*, 105 F.3d 99, 103 (2d Cir.), *cert. denied*, 522 U.S. 908 (1997).

First, Atlantic owns or has the exclusive rights to the copyrights in all of the sound recordings made by Plies and Gucci Mane during the term of their agreements with Atlantic. Atlantic currently owns a copyright registration that covers "Freaky Gurl Remix" by Gucci Mane and is the exclusive license of a copyright registration that covers "Shawty," "You," "Hypnotized," and "Murkin' Season."[3] (Kushner Dec. ¶ 25; A copy of Atlantic's copyright registration for *Back to the Traphouse* is attached as Exhibit 26.) As the owners of exclusive

---

*(Footnote continued from previous page)*
*55. However, Atlantic requests only equitable relief in this motion for preliminary injunction. *Id.*

[3] Ownership of a copyright registration in a collective work, here an album, covers each of the individual works embodied on the collective work. *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001) ("Under the law of this Circuit, where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under §411(a) for the constituent part.") (citations omitted).

rights in this work, Plaintiff is entitled to bring this copyright action. *See* 17 U.S.C.A. § 201(d)(2) (1997) ("The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.").

Second, it is clear from the declaration of musicologist Anthony Ricigliano ("Ricigliano") that Defendants' Infringing Albums contain unauthorized copies of sound recordings owned by Atlantic. Ricigliano determined that both BCD's album *Real Definitions* and Mixtrap's album *Definition of Real* contain sound recordings by Plies. At least some of those recordings were made by Plies during the term of his agreement with Atlantic.

Ricigliano also determined that Mixtrap's *Definition of Real* album contains recordings that infringe Atlantic's rights in sound recordings previously released on the Atlantic album *The Real Testament*, for which Atlantic has filed an application for copyright registration. (Declaration of Anthony Ricigliano dated June 4, 2008 ("Ricigliano Dec.") at ¶¶ 6-8.) According to Ricigliano, Mixtrap's *Definition of Real* album includes actual copies of the sound recordings "Shawty," "You," "Hypnotized" and "Murkin Season" from the Atlantic album *The Real Testament*. (Ricigliano Dec. ¶ 6.) In addition, Ricigliano determined that Mixtrap's *Definition of Real* embodies an actual copy of the recording "Bust it Baby Part 1," which is embodied on a special version of Atlantic's *Definition of Real* album scheduled for release on June 10, 2008. (Ricigliano Dec. ¶ 8.)

While BCD's album *Real Definitions* does not appear to contain copies of Plies recordings embodied on albums previously released by Atlantic, it clearly contains recordings by Plies that are exclusively licensed to Atlantic and for which Atlantic will seek copyright protection. For example, "Shawty Remix" is based on the composition of "Shawty," which was not first published until 2007. As Plies' agreement with Atlantic is deemed to have commenced

in 2004, the recording of "Shawty" could only have been made by Plies during the term of that agreement, giving Atlantic the exclusive right to it. (Kushner Dec. ¶ 33.)

    (d)  Tortious Interference – Defendants Have Interfered with
        <u>Atlantic's Exclusive License Agreements with its Artists</u>

To prevail on its tortious interference with contract claims, Atlantic must prove that (1) it has valid license agreements with Plies and Gucci Mane, (2) Defendants knew Plies and Gucci Mane had exclusive license agreements, and (3) Defendants intentionally and improperly procured the breach of those agreements. *The Score Board v. Upper Deck Co.*, 959 F. Supp. 234, 238 (D.N.J. 1997); *Telerate Systems, Inc. v. Caro*, 689 F. Supp. 221, 225 (S.D.N.Y. 1988).

There can be no dispute that Atlantic has exclusive rights to use Plies' and Gucci Mane's names and likenesses and to exploit their recordings. BCD had knowledge of the licensing agreement through the cease and desist letters notifying BCD that it was interfering with these agreements. Additionally, BCD's lawyer contacted Plaintiff to acquire rights to some of the recordings. And as distributors of CDs to major U.S. retailers, both Defendants were or should have been aware of the existence of license agreements. *See Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983). This general knowledge is sufficient, as knowledge of the specific terms of the agreement is not needed. *S&L Vitamins, Inc. v. Australian Gold, Inc.* 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007).

Finally, by using Plies' and Gucci Mane's names and likenesses to promote the Infringing Albums, Defendants are depriving Atlantic of the exclusivity to such names and likenesses that it bargained for and are therefore tortiously interfering with Atlantic's agreements with the Artists. *S&L Vitamins*, 521 F. Supp. 2d at 217 ("Whether [Defendants are] twice



removed from the contractual relationship between [Plaintiff] and third parties is irrelevant. A defendant can still be held liable for its tortious conduct despite its circuitous conduct.").

    3.    <u>Serious Questions as to Merits and Balance of Hardships</u>

Atlantic is entitled to a preliminary injunction because there are sufficiently serious questions going to the merits to make them fair grounds for litigation and a balancing of hardships tipping in Atlantic's favor. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997).

    (a)    <u>Serious Questions as to Merits</u>

Atlantie has clearly demonstrated a high probability of success on the merits of its claims against BCD and Mixtrap and thus easily meets the requirement of establishing sufficiently serious questions going to the merits to make them fair grounds for litigation.

    (b)    <u>Balance of Hardships</u>

The balance of the hardships weighs heavily in favor of issuing a preliminary injunction. Here, the only damage to Defendants, lost revenues from the sale of the Infringing Albums, is irrelevant to the balancing-of-harms analysis. *The Score Board*, 959 F. Supp. at 240 (balance of harms favored preliminary injunction against distributor of unlicensed baseball memorabilia, because injunction merely required unlicensed distributor to honor plaintiff's exclusive distribution rights); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (defendant's lost profits merit little consideration in balancing tests); *Uneeda Doll Co. v. Regent Baby Prods. Corp.*, 355 F. Supp. 438, 445 (E.D.N.Y. 1972) ("The balancing of interests tips the scale in favor of a preliminary injunction: continued infringement not only erodes the plaintiff's statutory copyright but subjects the defendant to ever mounting damage and costs exposure[.]").

B.    Expedited Discovery is Appropriate

Expedited discovery is appropriate where a party shows: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable harm; and (4) some evidence that the injury [that] will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *Lentjes Bischoff/GmbH v. Joy Env't Techs., Inc.*, 986 F. Supp. 183, 188 (S.D.N.Y. 1997) (quoting *Irish Lesbian and Gay Org. v. Giuliani*, 918 F. Supp. 728, 730 (S.D.N.Y. 1996)). These factors are all met here.

As demonstrated above, Plaintiff is clearly being irreparably injured by Defendants' infringement of its exclusive rights and has a likelihood of success on the merits, satisfying the first two factors.

There is clearly a connection between the expedited discovery sought and the avoidance of additional irreparable harm. Plaintiff seeks limited information in support of a preliminary injunction hearing. Plaintiff seeks documents concerning Defendants' choice of the album names *Real Definitions* and *Definition of Real* and purported right to use such names. Finally, Plaintiff seeks any documents concerning Defendants' purported right to manufacture (or have manufactured) and distribute the Infringing Albums. Plaintiff also seeks one brief deposition from Defendant BCD and one from Defendant Mixtrap.

Separate and apart from the Preliminary Injunction hearing, Plaintiff proposes to take expedited discovery from Defendants in order to determine what other sound recordings Defendants are infringing. <u>This is not a fishing expedition</u>. From Atlantic's review of Defendants' websites it appears that Defendants are reproducing and distributing additional unauthorized recordings by Plies and Gucci Mane. (Declaration of Neal Mitchell dated June 4, 2008 ("Mitchell Dec.") at ¶¶ 2-6.) In order to minimize the burden on Defendants, Plaintiff

-15-



proposes taking expedited discovery in two phases. The first phase would be for Defendants to provide documents that would permit Atlantic to identify likely infringements of recordings owned by or licensed to Atlantic and its affiliates. By examining the titles of songs, their authors and the artists performing the songs, Atlantic will be able to determine which albums being distributed by Defendants likely infringe copyrights owned by or licensed to Atlantic and its affiliates. The names of the recordings will permit Atlantic and their affiliates to check their records to determine whether the use of compositions are licensed and whether the compositions or recordings appear on prior Atlantic releases. After identifying the potentially infringing albums being distributed by Defendants, Atlantic will seek production of copies of such albums for Atlantic's experts to review and determine whether they in fact infringe recordings owned by or licensed to Atlantic or its affiliates.

Finally, the injury that Plaintiff will suffer if it is not able to identify all of the infringing materials being distributed by Defendants, far outweighs the injury Defendants will suffer if expedited discovery is granted, as at one point or another Defendants will have to produce the requested information and causing them to do so expeditiously will not cause much harm.

### IV.   CONCLUSION

As shown above, Defendants are engaged in such blatant copyright and trademark infringement that a preliminary injunction is appropriate.

Dated: June 6, 2008                                         BLANK ROME LLP

                                                            _____
                                                            Kenneth L. Bressler (KB-3389)
                                                            Jennifer S. Smith (JS-1941)
                                                            405 Lexington Avenue
                                                            The Chrysler Building
                                                            New York, New York, 10174
                                                            (212)885-5000
                                                            *Attorneys for Plaintiff*